# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PATRICK L. GIDDEON,**

    Plaintiff,

-vs-                  Case No. 14-CV-331

**EDWARD FLYNN, et al.,**

    Defendants.

## DECISION AND ORDER

On March 25, 2014, Patrick Giddeon, a *pro se* plaintiff, filed a civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On October 20, 2014, he filed an amended complaint identifying the unnamed defendants. (ECF No. 24.) The Court screened the plaintiff's complaint pursuant to 28 U.S.C § 1915A(a) and allowed the plaintiff to proceed with his claims that the defendants violated his Fourth and Fourteenth Amendment rights during his arrest. (ECF Nos. 7, 25.) This matter is before the Court on the plaintiff's motion for summary judgment (ECF No. 54), which was fully briefed as of August 5, 2015.

In addition to responding to the plaintiff's motion, the defendants (except Kurt Kezeske[1]) requested, pursuant to Federal Rule of Civil Procedure

---

[1] U.S. Marshals served Kurt Kezeske with the summons and amended complaint on June 4, 2015. (ECF No. 62.) Kezeske did not file an answer to the plaintiff's amended complaint and is not represented by the remaining defendants' counsel. The

56(f), that the Court grant summary judgment in their favor rather than merely denying the plaintiff's summary judgment motion. The Court reminds defendants that the "rigors of the summary judgment procedures set forth in Fed.R.Civ.P. 56 and the court's companion local rule, Civil L.R. 56, are not empty formalities." *National Exchange Bank and Trust v. Petro-Chemical Systems*, Case No. 11-C-134, 2013 WL 1858621, at *2 (E.D. Wis. May 1, 2013). Due process requires that a party have a full opportunity to present the basis for its claims before a court terminates the case or cause of action. *Id*. Generally, this "entails a movant supporting its claim with a detailed list of proposed findings of fact, each supported by a specific citation to an applicable part of the record. The nonmovant then has the opportunity to challenge the movant's contentions by not only submitting a memorandum of law in opposition to the motion but also responding to each one of the movant's proposed findings of fact and supplementing those proposed facts with proposed facts of its own." *Id*. (internal citations omitted).

Although the Court does not favor the shortcut cross-motion procedure that the defendants are advancing, it notes that the plaintiff's reply brief references the defendants' "motion for summary judgment" and specifically requests that the Court "deny Defendants' motion for summary judgment."

---

Court will address Kezeske separately at the end of this order. General references to the defendants' summary judgment motion should be read to exclude Kezeske.

(ECF No. 73 at 3, 10.) In addition, the plaintiff responds at length to each of the defendants' proposed additional facts and arguments. (ECF No. 74.) Given that the plaintiff did not object to the defendants moving for summary judgment in their response to his motion and given that the plaintiff had a reasonable opportunity to respond to the defendants' arguments and additional proposed facts, the Court will also consider the defendants' response as a cross-motion for summary judgment.

For the reasons set forth below, the defendants' motion is granted.

## I. RELEVANT FACTS[2]

### A. The Parties

The plaintiff is currently incarcerated at Oshkosh Correctional Institution. The events alleged in the plaintiff's complaint occurred on August 25, 2012, in connection with his arrest.

The defendants are the following Milwaukee Police Department officials: Edward Flynn, Michael Thomas, Jr., Claude Osburn, Jr., Kurt D. Kezeske, Raymond L. Monfre, Dustin J. Kegley, Tabatha L. Kurzynski, Ronald Campos, and Geoffrey Keen. The plaintiff is also suing the City of Milwaukee.

---

[2] The facts in this section are primarily taken from the plaintiff's and the defendants' proposed statements of facts. (ECF No. 74.) The facts are undisputed unless otherwise noted by the Court.

- 3 -

**B. The Events of August 25, 2012**

On the morning of August 25, 2012, the Milwaukee Police Department dispatch received calls from Qeletha and Deletha Smith for a possible domestic violence complaint. Shortly thereafter, defendants Thomas, Osburn, and Keen arrived at the scene to investigate the complaint.

Thomas's incident report indicates that he spoke with Qeletha Smith who stated that the plaintiff (her former boyfriend and the father of her child) entered her house, yelled at her, placed his hand on her neck, and pushed her to the ground. (ECF No. 56-3 at 1.) Osborn spoke to Qeletha only briefly before beginning his search for the plaintiff.

Osburn's incident report indicates that, while checking the area for the plaintiff, Deletha called to inform the officers that the plaintiff returned to the house to possibly retrieve a gun. (*Id.* at 2-3) Osburn spoke to the plaintiff's son who stated that the plaintiff "ran into the yard, picked up the gun from under the rear porch of the house and ran northwest through the alley." (*Id.* at 3.) Osburn checked the area on foot but was not able to locate the plaintiff. (*Id.*)

About two hours after the initial complaint, the plaintiff was one of six passengers in a car. The car entered an alley to pick up the plaintiff's sister. Osburn was in a police van nearby and followed the car into the alley. Osburn stopped the vehicle by flashing his lights and sounding his siren.

The car was traveling within the speed limit, was fully registered and licensed, and had not violated any traffic laws at the time Osburn stopped it. Osborn approached the car, and the driver rolled down his window to ask if there was a problem. Osborn said no, but refused to let the car leave until all the occupants of the car informed him of their names. When the plaintiff stated his name, Osborn grabbed his Taser and called for back-up.

After a few minutes, additional officers arrived and approached the vehicle with guns drawn. The officers ordered all of the occupants except for the plaintiff to get out of the vehicle. Osborn then ordered the plaintiff out of the vehicle, handcuffed him, and placed him under arrest. The plaintiff did not have any guns or weapons on his person when he was arrested.

The driver of the car gave Osborn permission to search the car and the trunk. In the trunk, Osborn found an orange bag, which he searched with the permission of the driver. Osborn found a gun inside the bag. The driver informed Osborn that the plaintiff's sister had placed the bag in the trunk, and the plaintiff's sister, who appeared to be under the influence of alcohol, informed Osborn that the gun belonged to the plaintiff.

Osborn and Kezeske questioned the plaintiff about the gun. They did not read the plaintiff his rights, and they denied his request to be transported to the police station. After the plaintiff repeated for about thirty minutes that he did not know anything about the gun and that he wanted to be

- 5 -

Case 2:14-cv-00331-LA   Filed 10/20/15   Page 5 of 16   Document 76

transported to the station, the plaintiff indicates that Osborn informed the plaintiff that he would sit in the back of the squad car until he acknowledged that the gun was his. Osborn closed the squad car door and walked away.

After about five minutes, Osborn returned and started to question the plaintiff again. The plaintiff told Osborn that the car was hot and he felt light-headed. He asked again to be taken to the station. The plaintiff states that Osborn repeated that the plaintiff was going to sit there until he admitted the gun belonged to him. Kezeske was sitting in the driver seat when Osborn made this statement.

According to the plaintiff, Osborn said to him, "If you say the gun is yours I would let everybody go and tell the District Attorney that you was a Good Samaritan." (ECF No. 74 at 11.) The plaintiff asked Osborn what he wanted him to say, and Osborn instructed him to say, "It's my gun." (*Id.*) The plaintiff says he said, "What you said," to which Osborn replied that the plaintiff needed to say "it's my gun" loudly so that both Keen and Kezeske could hear. The plaintiff asked Keen and Kezeske if they were going to let Osborn treat him like that, but they just turned their head. The plaintiff said that Osborn then closed the squad car door and told Kezeske to take the plaintiff to the station.

According to Osborn's incident report, Osborn told the plaintiff that he had found a gun that his sister admitted to placing in the car. He advised the

plaintiff that because the driver is a convicted felon he was going to have to arrest the driver. Osborn's incident report states that the plaintiff began to tear-up and shake his head. He said, "I can't allow someone else to be arrested for something I did, I'm a good Samaritan. You know whose gun it is, it's my gun." (ECF No. 56-3 at 3.) Osborn's incident report indicates that the plaintiff refused to make any further statements.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. ANALYSIS

### A. Stopping the Car without Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Cont. Amend. IV. As the Seventh Circuit has noted:

> Over time, the Supreme Court has developed a series of corollary principles to give effect to this basic constitutional mandate in the particular context of automobile searches. The temporary detention of an individual during the stop of an automobile by the police, even if only for a short period of time and for a limited purpose, constitutes the seizure of a person within the meaning of this constitutional provision. Consequently, an automobile stop is subject to the constitutional imperative that it not be unreasonable under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whether probable cause exists depends upon the reasonable conclusions to be drawn from the facts known to the officer at the time he acts.

*Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 456-57 (7th Cir. 2010) (internal quotations and citations omitted).

The plaintiff argues that Osborn did not have probable cause to stop the car in which he was a passenger because the car was traveling within the speed limit, was properly licensed and registered, and the driver had not committed any traffic violations. He argues that the arrest that occurred flows from that unlawful stop. The defendants' agree that Osborn lacked probable cause to stop the car, but they argue that the lack of probable cause is immaterial as to the plaintiff because Osborn had probable cause to arrest him.

The Seventh Circuit has explained that,

> In [*U.S. v.*] *Green* we said the question was whether "the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct," 111 F.3d [515,] 521 [(7th Cir. 1997)], and in like vein in [*U.S. v.*] *Johnson* we considered whether "a lawful arrest based on any outstanding warrant for a passenger in the vehicle constituted an intervening circumstance that dissipated any taint caused by an initial traffic stop that had lacked reasonable suspicion," 383 F.3d [538], 544 [(7th Cir. 2004)], and concluded that it did. But a simpler way to justify the result in those cases (and this one), without talking about "taints" and "dissipation" and "intervening circumstances" (and what do those terms mean, really?), is to note simply that the arrest was based on a valid warrant rather than on anything turned up in the illegal search. If police stopped cars randomly, looking for persons against whom there were outstanding warrants, the drivers and passengers not named in warrants would have good Fourth Amendment claims. But a person named in a valid warrant has no right

> to be at large, and so suffers no infringement of his rights
> when he is apprehended unless some other right of his is
> infringed, as would be the case had the police roughed up
> Atkins gratuitously in the course of trying to determine
> whether he was the person named in the warrant. *Graham v.
> Connor*, 490 U.S. 386, 396–97 (1989); *Catlin v. City of Wheaton*, 574
> F.3d 361, 366 (7th Cir. 2009); *Cortez v. McCauley*, 478 F.3d 1108,
> 1127 (10th Cir. 2007) (*en banc*). But that is not the plaintiff's
> complaint.

*Atkins v. City of Chicago*, 631 F.3d 823, 826-27 (7th Cir. 2011).

The plaintiff points out that, unlike in *Atkins*, there was no warrant for his arrest; however, he does not dispute that Osborn had probable cause to arrest him.[3] The defendants argue that probable cause for a warrantless arrest is equivalent to probable cause for the issuance of an arrest warrant, so the analysis in *Atkins* applies with equal force in these circumstances.

The Court concludes that *Atkins* applies because Osborn had probable cause to arrest the plaintiff based on the domestic violence complaint he had responded to earlier that day and based on the information he had about the plaintiff's retrieval of a gun. In short, there was no infringement of the plaintiff's rights when Osborn stopped the car without probable cause and took the plaintiff into custody because there was independent, pre-existing

---

[3] The plaintiff identifies discrepancies between Osborn's incident report and his testimony at a suppression hearing about whom Osborn learned his information from (i.e., from a witness or from another officer), but he does not dispute that Osborn, along with other officers, responded to a domestic violence complaint or that Osborn spoke to the plaintiff's son who advised Osborn that his dad had retrieved a gun and left on foot.

- 10 -

probable cause for the plaintiff's arrest. *See Banks v. Fuentes*, 545 Fed.Appx. 518, 520-21 (7th Cir. 2013) ("Like a warrant, the investigative alert authorized [the plaintiff's] arrest because other officers already had made a determination of probable cause. Thus, there was no infringement of [the plaintiff's] rights when the officers stopped him and took him into custody . . . .") (citations omitted). The Court grants the defendants' motion for summary judgment as to this claim.

## B. The Search of the Car

The plaintiff also contends that there was an unlawful search of the trunk of the car, which resulted in the discovery of a gun. The plaintiff was not the driver of the car, and, according to the defendants, the driver gave Osborn permission to search the car, including the trunk and the bags located therein. The plaintiff does not dispute this fact; he merely states that it is not supported by the record. That is not so. Osborn's incident report, which the plaintiff entered into the record (see ECF No. 56), states, "Randolph [the driver of the car], . . . gave me permission to search all areas of the car and or baggage." (ECF No. 56-3 at 3.)

In any event, "rights guaranteed by the Fourth Amendment are personal, and may not be assessed vicariously. Rather, they must be championed by the one whose rights were infringed by the government's conduct." *U.S. v. Price*, 54 F.3d 342, 345-46 (7th Cir. 1995). Here, only the

- 11 -

driver of the car had a reasonable expectation of privacy in it; the same cannot be said for the plaintiff "who was a mere passenger going along for the ride." *Id.*; see *U.S. v. Walton*, 763 F.3d 655, 666 (7th Cir. 2014) (holding that a passenger lacks standing because "A mere passenger has no right to ward off onlookers or protect his privacy in a car that he has no power over."). As such, the plaintiff has no standing to challenge the search of the vehicle and summary judgment will be granted in favor of defendants on this claim.

**C. Osborn's Interrogation of the Plaintiff**

The plaintiff also argues that Osborn's questioning of him for thirty minutes violated the Fourth Amendment. Specifically, the plaintiff states that he was forced to sit in the back of the squad car for about thirty minutes and told that he would not be transported to the station until he admitted that the gun found in the trunk belonged to him. The plaintiff states that at one point, he was left in the squad car with the door closed for five minutes, during which time he became hot and light-headed. The plaintiff does not state whether the squad car was running during this five minutes, but he does indicate that another officer sat in the front seat while Osborn spoke to him.

The plaintiff's claim that Osborn used excessive force in the course of the arrest is analyzed under the Fourth Amendment's "reasonableness" standard. *Sow v. Fortville Police Department*, 636 F.3d 293, 303 (7th Cir.

- 12 -

2011). "The 'reasonableness' of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*.

The plaintiff was not subjected to excessive force merely because he sat in the back of a squad car with the door closed for five minutes while another officer sat in the front seat. The plaintiff points to no case law to support this claim, nor does he allege any other type of physical contact or use of force. The plaintiff's claim will be dismissed.

**D. Supervisory and Municipal Liability Claims**

"A failure to train theory or a failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim." *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). Because the Court has concluded that the officers did not violate the Constitution in connection with the plaintiff's arrest, defendants Flynn, Keen and the City of Milwaukee cannot be held liable to the plaintiff. *Id*. (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).

**E. Kurt D. Kezeske**

On July 17, 2015, the U.S. Marshals filed a Process Receipt and Return form indicating they served Kezeske with the summons and amended complaint on June 4, 2015. (ECF No. 62.) Kezeske did not respond to the plaintiff's amended complaint, nor has he entered an appearance. Although

- 13 -

the plaintiff filed a declaration in support of an entry of default on May 8, 2015 (which was premature in light of the Court's order to the Marshals to make additional efforts to serve Kezeske), the plaintiff did not file any such declaration after Kezeske was served with the summons and amended complaint on June 4, 2015.

The Court finds that even if the plaintiff had timely requested the entry of a default order, the only just outcome as to Kezeske is to dismiss him from this action. Even where an order of default has been entered (which it has not here), entry of a default judgment is not a matter of right. 10 *Moore's Federal Practice and Procedure—Civil* §55.20. Whether a default judgment should be entered is a matter resting in the sound discretion of the district court. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983). A factor this Court must consider in exercising its discretion is whether entry of a default judgment will result in injustice. *See McDaniel v. Nationwide*, 85 B.R. 69, 71 (N.D. Ill. 1988) (citations omitted); *see Hudson v. State of N.C.*, 158 F.R.D. 78, 80 (E.D. N.C. 1994).

Here, the Court has fully analyzed the plaintiff's claims and found that they lack merit. There are no facts unique to Kezeske that would result in a different finding as to him. In fact, the plaintiff simply lumps Kezeske in with Osborn and the rest of the officers. It would be unjust to allow the

- 14 -

plaintiff to prevail on invalid claims based only on Kezeske's procedural missteps. Accordingly, the Court dismisses Kezeske from this action.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the plaintiff's motion for summary judgment (ECF No. 54) is **DENIED.**

**IT IS ALSO ORDERED THAT** the defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED THAT** defendant Kurt Kezeske is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Federal

Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**